*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0135**

State of Minnesota,
Respondent,

vs.

Raymond Eugene Taylor,
Appellant.

**Filed January 5, 2015
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CR-13-20095

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, J. Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Melissa Sheridan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Cleary, Chief Judge; and Schellhas, Judge.

## U N P U B L I S H E D   O P I N I O N

**ROSS**, Judge

Raymond Taylor broke through his ex-girlfriend's apartment door, grabbed her by the throat, and threatened her life. A jury found him guilty of multiple felonies: domestic

assault, violation of a protection order, and alternative counts of first-degree burglary. Taylor appeals, arguing mainly that the district court erred by admitting testimony about his prior domestic abuse of the victim. Because the district court acted within its discretion to admit the probative relationship evidence, we affirm.

## FACTS

Raymond Taylor had a five-year romantic relationship with D.A.  According to D.A., Taylor had verbally and physically abused her and threatened to kill her if she ever left him. She secured a two-year order for protection against Taylor in December 2012.

In June 2013, Taylor sent D.A. text messages asking her to allow him to come to her apartment. She told him to stay away, but he said he was coming anyway. He sent more messages after he arrived outside, threatening to break down her door.  D.A. dialed 9-1-1 and fearfully spoke with the dispatcher in a recorded discussion. Taylor pounded the door loudly enough for the pounding to be captured on the recording. Then he broke through the door. He grabbed D.A.'s cellphone from her hand, and, according to D.A., he seized her by the neck. He pushed her away from the door and threatened her, saying, "I could kill you, b - - - h."  D.A. tried to calm him down.

Police arrived in about five minutes. They entered the apartment and found the couple. Taylor stood positioned between the doorway and D.A.  D.A. ran to the police and started to cry. She told them she was afraid. Police arrested Taylor and removed D.A.'s phone from his pocket. Taylor angrily threatened, "That b - - - h is going to get hers when I get out."

2

D.A. did not immediately tell the officers that Taylor had touched her. And she left blank the two sections of the victim's domestic violence supplement to the police report where she could have specified how Taylor had grabbed her.

The state charged Taylor with felony domestic assault, felony violation of a protection order, and alternative counts of first-degree burglary. *See* Minn. Stat. §§ 609.2242, 518B.01, .582 (2012). At trial, D.A. and the responding officers recounted the incident as just described. D.A. testified about her day-of-incident decision not to tell the responding officers or include in her written report her account of Taylor's grabbing her by the throat. She explained that she had been shaken up by the encounter. Taylor's attorney attempted to impeach D.A.'s credibility on cross-examination.

Over Taylor's objections, the district court allowed the state to elicit testimony about four prior incidents of abuse, relying on Minnesota Statutes section 634.20 and Minnesota Rule of Evidence 404(b). These incidents involved Taylor's striking or grabbing D.A., leaving cuts or bruises. The district court indicated that it allowed the evidence because it revealed the nature of the relationship between Taylor and D.A. and put the allegations in context. The court reasoned that the evidence could inform the jury about Taylor's and D.A.'s state of mind during the incident. The trial judge twice instructed the jury to consider the evidence only for that purpose.

The jury found Taylor guilty on all charges. The district court sentenced him to prison for 81 months. Taylor appeals his conviction.

**D E C I S I O N**

Taylor gives two grounds for his appeal. He asks us to reverse his conviction because police violated his *Miranda* rights and because the district court subjected him to an unfair trial. Neither argument persuades us to reverse.

**I**

Taylor argues that police violated his rights because they did not read him the *Miranda* warning during his arrest. The interrogation-based right to remain silent and right to an attorney announced in the *Miranda* warning are unnecessary unless police question the detainee. *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S. Ct. 1682, 1689 (1980). This includes an officer's asking questions or even making statements that the officer should know are "reasonably likely to elicit an incriminating response." *Id.* at 302, 100 S. Ct. at 1690. But police did not ask Taylor questions or make statements likely to invoke an incriminating response. Taylor initiated a conversation by asking the police questions. The squad car recording reveals that police answered Taylor's questions and that after he told them he had "some people to deal with y'all," they asked him to clarify what he meant. The officers did not interrogate Taylor. No *Miranda* warnings were necessary.

**II**

Taylor also contends that the district court improperly allowed the prosecutor to introduce unfairly prejudicial evidence detailing his prior domestic abuse against D.A. We will not reverse a district court's evidentiary rulings unless we discern a clear abuse of discretion resulting in prejudice. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

A district court presiding in a domestic abuse trial may admit "[e]vidence of similar conduct by the accused against the victim of domestic abuse . . . unless the probative value is substantially outweighed by the danger of unfair prejudice . . . ." Minn. Stat. § 634.20 (2012). We call this "relationship evidence" and, despite the risk of its being misused as character evidence against the defendant, it is allowed to give context to the incident or to testimony. *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010); *State v. McCoy* 682 N.W.2d 153, 159–61 (Minn. 2004). This is because, in domestic abuse cases, evidence of past violence by the defendant against the same victim has inherent probative value. *State v. Williams*, 593 N.W.2d 227, 236 (Minn. 1999). Knowing the violent nature of the alleged victim's relationship to the alleged abuser may inform the jury when it contemplates why a reporter of abuse initially withheld information or later changed her story. *See McCoy*, 682 N.W.2d at 159, 161. Relationship evidence may also help the jury assess the defendant's intent and motivation. *State v. Henriksen*, 522 N.W.2d 928, 929 (Minn. 1994). This evidence is unfairly prejudicial only if it "persuades by illegitimate means." *State v. Bell*, 719 N.W.2d 635, 641 (Minn. 2006). If evidence is admissible under section 634.20, we need not address its admissibility under rule 404(b). *State v. Gutierrez*, 667 N.W.2d 426, 435 (Minn. 2003).

Evidence of Taylor's prior abuse fits the purpose of the statute and does not appear to us to have been unfairly prejudicial to him. The evidence could help jurors understand why the apartment scene was apparently calm as police entered, and why D.A. did not immediately tell police about the attack that she later recounted. Without being given the historic relationship evidence, jurors would have assumed an irreconcilable inconsistency

existed between D.A.'s on-scene demeanor and her eventual report of violence. Knowing about the evidence, however, jurors could make a more informed decision when considering whether D.A.'s delayed report was truthful or fabricated. They might, for example, explore the possibility that D.A.'s calm presence and tardy reporting may have been motivated by her own fear rather than Taylor's innocence.

The prosecutor also connected the relationship evidence to elements of the charges. The state charged Taylor alternatively with assault causing harm and with assault intending to cause fear of harm. *See* Minn. Stat. § 609.2242, subd. 1(2) and subd. 1(1). The relationship history would help prevent a jury from dismissing the possibility that, despite D.A.'s seemingly fearless demeanor, Taylor's actions had caused her to fear being harmed. On similar grounds, the relationship history supported an element of the burglary charge because it informed the jury that Taylor may have entered the apartment intending to commit a fear-inducing assault inside.

In contrast to the significant probative value of the relationship evidence presented here, the evidence had only minimal inflammatory and prejudicial qualities. We know that, of course, the evidence has *some* prejudicial quality. But it was not unduly prejudicial. It included only four prior incidents and none was so shocking in detail by comparison to this incident as to be unfair. Additionally, any prejudice from this evidence was only incremental; the jurors necessarily were informed that D.A. had previously secured an order for protection against Taylor, so by the time they received the disputed relationship evidence they had already inferred that Taylor had in some fashion assaulted D.A. previously. And the district court mitigated the incremental prejudice with limiting

6

instructions to reduce any risk that jurors would use the evidence improperly. We trust that jurors follow the district court's instructions. *State v. Ferguson*, 581 N.W.2d 824, 833 (Minn. 1998).

On balance, we hold that the probative value of the relationship evidence was not substantially outweighed by the risk of its unfairly prejudicing Taylor. The district court therefore acted well within its discretion by admitting it.

**Affirmed.**